**BEST MEDIUM PUBLISHING CO., Inc.,**
Plaintiff-Counterdefendant-Appellee,

v.

**The NATIONAL INSIDER, INC.,**
Defendant-Counterclaimant-
Appellant.

**No. 16122.**

United States Court of Appeals
Seventh Circuit.

Oct. 31, 1967.

Rehearing Denied Nov. 29, 1967.

Elmer Gertz, Chicago, Ill. (Wayne B. Giampietro, Chicago, Ill., on the brief), for appellant.

Frank J. McGarr, Daniel A. Becco, Walter H. Moses, Jr., Chicago, Ill., for appellee.

Before KNOCH, FAIRCHILD and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

In this case, the publisher of the New York weekly tabloid newspaper, The National Enquirer (the "Enquirer"), charged that a competing Chicago weekly, The National Insider (the "Insider"), with a much smaller circulation, infringed the copyrights on six articles previously published in the Enquirer. The District Court found for the Enquirer and denied the Insider any relief on its counterclaim which charged that the Enquirer infringed the copyrights on six articles appearing in the Insider. The Enquirer was awarded injunctive relief, $250 minimum statutory damages for each of the six articles, and costs.

Of the six articles covered by the amended complaint,[1] four dealt with Hollywood personalities, viz., Groucho Marx, James Mason, George Raft, and John Wayne. The fifth article reported a visit of Corporal Melvin Mayfield, a

1. At the time of trial, the Enquirer was permitted to drop its allegations concerning three other articles purportedly infringed by the Insider.

holder of the Congressional Medal of Honor, to President Truman, opposing the building of a dam in Ohio. The sixth article concerned marriages performed at a Miami gas station. The Insider's six articles were virtually identical to the Enquirer's.

The principal dispute between the parties was whether the Enquirer had purchased all publication rights or only first publication rights to the six articles covered by the amended complaint. The contracts between the Enquirer and the authors were silent on this point. However, the Enquirer offered the testimony of two "experts" that the prevailing practice in the trade is that when a free-lance author sells an article, he sells all rights thereto unless he indicates other restrictions. The Enquirer's editor and managing editor testified to the same effect in their depositions. The Enquirer also cited two articles to the same effect.[2] The Insider did not introduce contrary expert testimony. The District Court observed that the evidence presented by the litigants was in complete conflict, but found that the Enquirer had purchased full rights to these six articles.

■ Where, as here, the only testimony was before the court by deposition, the findings of a trial court are not as binding under Rule 52(a) of the Federal Rules of Civil Procedure as where the court has had the opportunity to observe the demeanor of the witnesses. Kiwi Coders Corporation v. Acro Tool & Die Works, 250 F.2d 562, 568 (7th Cir. 1957); cf. Lundgren v. Freeman, 307 F. 2d 104, 113–115 (9th Cir. 1962). However, our examination of the evidence satisfies us that the District Court's finding of the Enquirer's all publication rights purchases was justified and should not be overturned.

■ The Insider next argues that the four Hollywood articles are not susceptible to copyright, on the ground that they do not contain original material. But it is well settled that copyrighted matter need not be strikingly unique or novel. A distinguishable variation suffices. Wihtol v. Wells, 231 F.2d 550, 553 (7th Cir. 1956). Because of the Enquirer's different adaptation and arrangement of words in these articles, there was enough originality to bring the articles within the protection of the copyright law even though they were derived from other sources. Originality, in the context of the copyright laws, " 'means little more than a prohibition of actual copying.' " Alfred Bell & Co. v. Catalda Fine Arts, 191 F.2d 99, 103 (2d Cir. 1951). These articles were not slavish copies of source materials; they were sufficiently transformed to meet the copyright test of originality. Nimmer on Copyright, § 10.1.

■ The District Court held that the defendant's counterclaim was without merit. A comparison of the Insider's six articles and the Enquirer's six articles specified in the counterclaim shows that the Enquirer did not copy the Insider's articles, even though there are some resemblances. Moreover, except possibly in one instance, the Enquirer was working on the stories before the Insider's articles appeared. In our view, the Insider did not discharge its burden of establishing infringement.

■ The District Court awarded costs to the Enquirer. Under 17 U.S.C. § 116, full costs are mandatory in favor of the prevailing party. Official Aviation Guide Co. v. American Aviation Associates, 162 F.2d 541, 543 (7th Cir. 1947). Here the Insider urges that costs should be apportioned, claiming that it was the prevailing party as to the charges dropped by the Enquirer (see note 1 supra). The District Court concluded that "the prevailing party" is the one who prevails as to the substantial part of the litigation, here the Enquirer.[3]

---

2. Wasserstrom, "Magazine and Newspaper Syndication Problems" (Copyright Problems Analyzed (CCH 1953)) p. 159; Henn, "Magazine Rights'—A Division of Indivisible Copyright," 40 Cornell Law Quarterly 411, 438 (1955), reproduced in Copyright and Related Topics (UCLA School of Law (1964)), p. 201.

3. This ruling accords with the construction of the identical phrase in Rule 54(d) of

We will defer to the trial court in this respect. Cf. Armour Research Foundation v. C. K. Williams & Co., 280 F.2d 499, 508 (7th Cir. 1960), certiorari denied, 365 U.S. 811, 81 S.Ct. 690, 5 L.Ed.2d 691.

The judgment is affirmed.

the Federal Rules of Civil Procedure. Hines v. Perez, 242 F.2d 459, 466 (9th Cir. 1957); 6 Moore's Federal Practice (2d ed. 1966) ¶ 54.70 [4]. See also Official Aviation Guide Co. v. American Aviation Associates, supra; Nimmer on Copyright, p. 703.