**Dr. Seymour KESSLER, Plaintiff,**

v.

**SUPERIOR CARE, INC., Defendant.**

**No. 86 C 5656.**

United States District Court,
N.D. Illinois, E.D.

Sept. 8, 1989.

Stephen B. Diamond, Andrew H. Haber, Beeler, Schad & Diamond, P.C., Chicago, Ill., for plaintiff.

S. David Fineman, Alice W. Beck, Fineman & Bach, P.C., Philadelphia, Pa., Wayne Giampietro, Witwer, Burlage, Poltrock & Giampietro, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Dr. Seymour Kessler ("Kessler") sued Superior Care, Inc. ("Superior") in this action, ultimately asserting in his three-count Second Amended Complaint ("SAC") two claims of breach of contract and one for indemnification. On either January 14 or 28, 1988 Superior tendered a $302,000 offer of judgment pursuant to Fed.R.Civ.P. ("Rule") 68.[1] Kessler did not accept that offer.

After this Court's September 18, 1988 opinion (the "Opinion") had granted Superior's motion for partial summary judgment to eliminate Kessler's Count 3[2] indemnification claim, Counts 1 and 2 proceeded to trial earlier this year. At the end of trial the jury returned a verdict of $224,707 on Count 1 as the unpaid balance of a promissory note (the "Note") and $10,200 on Count 2 as the amount due on Superior's guaranty of lease rentals (the "Guaranty"). This Court added to that verdict a total of $41,657.71 in accordance with the parties' advice as to the interest accrued up to the time of the Rule 68 offer, bringing the judgment amount to $276,564.71.

Each party has now moved for an award of attorneys' fees[3] and expenses under the parties' contractual provision calling for such recovery by a "prevailing party." Superior also invokes Rule 11 and 28 U.S.C. § 1927 ("Section 1927") as the predicate for an award of such items. Finally, Superior seeks recovery under Rule 68 for costs

---

1. Superior's offer bears a "January 14, 1987" date (there is no question that the year is anachronistic). But Kessler's current briefing consistently speaks of January 28, 1988, while other filings in the case have from time to time cited dates of January 12, 14, 19 and 28. Under the circumstances this opinion will simply employ the generic term "January 1988." Because the actual date becomes relevant to the proper calculations, the parties' further submissions will be expected to clarify the matter.

2. Although Kessler follows a frequent pleading practice by using Roman numerals in numbering his counts, this opinion employs Arabic numbers—far more prevalent in general usage.

3. There is no uniformity in case law or other usage as between "attorneys'" (the word used, for example, in the parties' contract and in 28 U.S.C. § 1927) and "attorney's" (the word used, for example, in Rule 11 and in 42 U.S.C. § 1988). In this instance each party had more than one lawyer involved in the case. Both for that reason and to avoid apparent inconsistency, this opinion will stick to "attorneys'" except where it actually quotes a source that employs the other version.

(including, it says, attorneys' fees) incurred after the offer of judgment.[4] For the reasons stated in this memorandum opinion and order:

1. Superior's contractually-based motion is granted (a) as to post-Rule 68-offer attorneys' fees, costs and expenses in their entirety and (b) as to pre-Rule 68-offer attorneys' fees, costs and expenses related to Count 2.

2. Kessler's contractually-based motion is granted as to pre-offer attorneys' fees, costs and expenses related to Count 1.

3. Superior's Rule 11 and Section 1927 motions are denied.

4. Superior's Rule 68 motion is denied as to attorneys' fees and is found moot as to costs in light of the ruling just referred to in numbered paragraph 1(a).

### Facts [5]

As for the Note sued on in Count 1, the parties' dispute was not over its validity or over any other issue bearing on Superior's liability as such, but rather as to the setoffs to which Superior was entitled against the Note's principal balance of $374,591.85. There was a good deal of shifting of sands on both sides of that quarrel.

On Kessler's side, his initial Complaint admitted setoffs of only $72,091.85 as of July 1, 1986. His Amended Complaint ("AC") conceded setoffs of $136,523.38 as of December 31, 1986, while the SAC reduced that to $134,461.85 as of November 30, 1987.[6] By contrast, during his deposition Kessler often stated his belief that Superior was not entitled to any setoffs at all. By the end of the pretrial stage, Kessler had changed his position—both in interrogatory answers and then in both the Final Pretrial Order and the Amended Final Pretrial Order ("FPTO")—to acknowledge setoffs aggregating $127,993.58 (low-

er than both of his then most recent pleading positions). By the time of trial, however, his Exhibit 34 (placed before the jury) again moved up somewhat to an admitted $130,493 in setoffs. Finally, during closing argument Kessler's counsel admitted Superior was entitled to approximately $150,000 in setoffs. That turned out to track very closely indeed with the jury's verdict of $224,707 on the Note, corresponding to $149,884 in setoffs.

On Superior's side, from the very nature of the dispute it had to operate somewhat in the dark—because Kessler had been controlling the financial operations of the medical practice, it was within Kessler's knowledge, and not really known to Superior, just which expenditures were legitimately related to that activity and which expenditures were for Kessler's personal account. Discovery was essential to provide most if not all the answers in that respect.

Accordingly Superior's first answer (to the AC) admitted signing the Note but disputed the claimed amount of setoffs. Lacking sufficient information, Superior did not offer its own figure. That position was then repeated in its answer to the SAC.

After it had obtained information via discovery, Superior first quantified its position. It claimed setoffs for a great many items that ultimately proved to be properly chargeable to the operations of the practice rather than to Kessler individually, for its position stated in the FPTO asserted a setoff total of $292,539.92. Its short trial brief stated an even larger boxcar figure ("in excess of $400,000") for the setoffs. At trial Kessler's Exhibit 34 showed Superior's claimed setoffs as aggregating $268,-426.42, but in closing argument Superior's counsel did not differ materially from Kes-

---

4. For analytical purposes it is most profitable to explore the latter avenue first, though it ultimately proves irrelevant in most if not all respects.

5. This memorandum opinion and order assumes familiarity with the Opinion, which recounts the events leading up to this lawsuit.

6. As with the Complaint, neither the AC nor the SAC identifies the amount of the setoffs directly. In each instance the text of this opinion reflects a derivative calculation—the amount alleged as the original principal balance of the Note less the amount alleged by Kessler to be due and owing as of the date referred to in the pleading.

sler's in stating the amount it sought to have credited against the Note.

As for the Guaranty, Kessler claimed $36,951.91 plus interest for the entire guaranty period. Here the dispute was not over setoffs. Instead Superior countered that its liability on the Guaranty had become extinguished after Kessler forgave rentals owing and to become due from the lessees (one of whom was Kessler's son). On that claim the jury ultimately returned only a $10,200 verdict for Kessler.

### Jurisdiction

■ As a preliminary matter, this opinion raises sua sponte the issue of this Court's jurisdiction to decide these motions. Each of Kessler's successive complaints prayed for an award of attorneys' fees under a contractual agreement between the parties, as well as for the contract damages due from Superior. Not only has this Court already entered final judgment[7] in Kessler's favor based on the jury verdict, but the case is on appeal to the Seventh Circuit. Though the parties have not addressed the question whether under such circumstances this Court can now deal with their cross-motions for recovery of attorneys' fees under the contractual provision (a part of the original prayer for relief), that question must be examined here.

Fortunately the question is susceptible of a quick, definitive and affirmative answer. Just last year *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 108 S.Ct. 1717, 1721–22, 100 L.Ed.2d 178 (1988) held "that an unresolved issue of attorneys' fees for the litigation in question does not prevent judgment on the merits from being final." That was announced as a uniform rule, applicable regardless of the source of the language authorizing attorneys' fees and regardless of whether attorneys' fees have been prayed for in the complaint (*id.*, 108 S.Ct. at 1720–21).

That being the case, neither the rendition of the final judgment without inclusion of a fee award nor the pending appeal from that judgment ousts this Court of jurisdiction to decide the cross-motions for attorneys' fees under the contract (see *Apostol v. Gallion*, 870 F.2d 1335, 1337–38 (7th Cir.1989)). This opinion can therefore turn to the merits of that issue.

### Rule 68

■ Superior claims that as a rejected Rule 68 offeror it is entitled to payment of its post-offer costs (including, it asserts, attorneys' fees). Unlike the typical fee-shifting statute, Rule 68 does not expressly advert to attorneys' fees at all:

> If the judgment finally obtained by the offeree is not more favorable than the [unaccepted Rule 68] offer, the offeree must pay the costs incurred after the making of the offer.

Superior offers a two-step argument to call on Rule 68. First it contends the judgment Kessler finally obtained was less than the offer (a factual question), giving it a right to post-offer costs. Then it urges that its contract with Kessler, providing for the award of attorneys' fees to the prevailing party in this action, embraces an award of Superior's post-offer attorneys' fees *as costs* under Rule 68. Both phases of Superior's position require close analysis.

At the first stage of Superior's argument, it must show that the ultimate judgment against it was not more favorable to Kessler than the unaccepted Rule 68 offer. That analysis cannot, however, stop with a simple surface comparison between the offer of $302,000 and the judgment for $276,-564.71. Kessler argues that two additions must be made to the final judgment: pre-offer costs of $4,138.38 and pre-offer attorneys' fees of $29,667.25. On that score Kessler points to *Grosvenor v. Brienen*, 801 F.2d 944, 947–48 (7th Cir.1986), which held that in a civil rights case the proper Rule 68 calculus is to compare (1) the offer

---

7. Finality of that judgment is really not open to question for more reasons than one. When after the jury verdict this Court asked the parties for the amount that ought to be reflected in the judgment order, they apprised this Court only of the added element of prejudgment interest. Neither party then suggested the inclusion of attorneys' fees or the deferral of entry of the judgment pending the determination of such fees.

made (including costs and attorneys' fees) with (2) the judgment award plus accrued costs and attorneys' fees at the offer date. In *Grosvenor* the reason for including that last element, of course, is the 42 U.S.C. § 1988 ("Section 1988") provision for the award to the prevailing civil rights plaintiff of such fees as part of costs.

Such a comparison enables counsel to make an informed judgment as to the best course of action for the client. If the first figure identified in *Grosvenor* exceeds the latter total, the Rule 68 offer ought to be accepted. But if the liability judgment at trial, plus the awardable fees and costs at the date of the Rule 68 offer, would exceed that offer, the lawyer and client would do right to reject it—and Rule 68 should not then cut off plaintiff's right to continued reimbursement for attorneys' fees as part of costs. Understandably, the definitive case in the field (*Marek v. Chesny*, 473 U.S. 1, 11, 105 S.Ct. 3012, 3017, 87 L.Ed.2d 1 (1985)) calls for just that line of analysis:

> To be sure, application of Rule 68 will require plaintiffs to "think very hard" about whether continued litigation is worthwhile; that is precisely what Rule 68 contemplates.

In this case, had Kessler accepted the offer he would have received $300,000 for liability and $2,000 for costs—no more and no less. That payment would not of course have left open a right for Kessler to recover attorneys' fees as well—under the Agreement and the SAC that was a specified part of the liability sought to be imposed, and the Rule 68 offer was "to allow judgment to be taken against [Superior] for liability."[8]

On the other side of the scales sits Kessler's ultimate judgment. That amount would have been no different as of January 1988, given this Court's determination that prejudgment interest stopped accruing on the date of the Rule 68 offer. What remains to complete the calculation, then, is an answer to the question whether and to what extent costs and attorneys' fees incurred by Kessler up to that date should be included in the weighing. As already stated, the claimed authority for such an award is in the portion of the parties' contractual arrangements that permits a "prevailing party" to recover such items. By way of a preview, the next section of this opinion concludes that Kessler is entitled to some of his claimed pre-Rule 68–offer costs and attorneys' fees, but that quantification requires further input from the parties.

If the total amount of Kessler's pre-offer attorneys' fees and costs were included, his total adjusted recovery for comparison purposes would be $310,370.34[9] (more than the $302,000 offer). But because (as will be seen) Kessler cannot lay claim to that total amount of fees and costs in any event, it is not now possible to decide which way the scales of the quite delicate balance may tip. This Court therefore reserves judgment on the first step of Superior's argument and moves on to the second step—the determination whether Rule 68 "costs" include attorneys' fees here.

In June 1985 Kessler and Superior entered into the contract (the "Agreement" that spawned the Note and Guaranty) that eventually became the subject matter of this lawsuit. Agreement ¶ 5 provided:

> This Agreement shall be governed by the laws of Illinois. If any controversy,

---

**8.** This situation may profitably be contrasted with those in which independent statutory authority (such as Section 1988) exists for awarding attorneys' fees *as part of costs.* In those instances a Rule 68 offer that does not specifically include costs may be accepted, yet the plaintiff may be permitted to return to court to collect attorneys' fees (see this Court's opinion in *Rateree v. Rockett,* 668 F.Supp. 1155, 1157–58 & n. 8 (N.D.Ill.1987), citing this Court's opinion in *Coleman v. McLaren,* 92 F.R.D. 754, 757 (N.D. Ill.1981), *aff'd sub nom. Pigeaud v. McLaren,* 699 F.2d 401, 403 (7th Cir.1983)). Those cases reinforce the conclusion that Superior's offer

could not properly be read as allowing Kessler to seek such fees separately after the offer had been accepted. And if that were not the case, Kessler would be rendered *worse* off in the comparison, because such fees would have to be *added* to the offer, making it even more likely that Kessler was wrong to reject it.

**9.** That is the sum of the $276,564.71 judgment plus Kessler's claimed pre-offer costs of $4,138.38 and his claimed pre-offer attorneys' fees of $29,667.25.

claim, or lawsuit arises in connection with this Agreement or any portion hereof, the prevailing party shall be entitled to recover from the losing party all reasonable attorneys' fees, costs and expenses.

Superior says Agreement ¶ 5 requires this Court to tax Superior's attorneys' fees as "costs" under Rule 68. It points to *Marek*, 473 U.S. at 9, 105 S.Ct. at 3016:

> [T]he term "costs" in Rule 68 was intended to refer to all costs properly awardable under the relevant substantive statute or other authority.

*Marek* however dealt with Section 1988, under which a prevailing party may be awarded fees "as part of the costs." There the Supreme Court overturned our Court of Appeals and validated this Court's earlier determination, as the trial court, that Rule 68 called for an award of fees as part of "costs" in that situation (see those earlier opinions at 720 F.2d 474 (7th Cir.1983) and 547 F.Supp. 542 (N.D.Ill.1982)).

But whether or not *Marek* 's reference to "other authority" might under some circumstances encompass private contractual arrangements (a question that need not be decided here), Superior is totally off base in looking to *Marek* or Rule 68 as a predicate for sticking Kessler with its post-offer lawyers' fees. Throughout its discussion *Marek* plainly spoke only to situations in which the substantive authority—in that case Section 1988—expressly defined "costs" to include attorneys' fees. This Court's opinion in *Marek*, 547 F.Supp. at 547 had in part drawn on a Gertrude Stein type of approach ("Costs are costs are costs") to adopt what it viewed as the plain reading of Rule 68 and Section 1988 where both of them employed the identical term "costs"—a term that Section 1988 defined in substantive terms to include "attorney's fees." That plain reading had been viewed by the Seventh Circuit, 720 F.2d at 478 as a "rather mechanical linking up ... though in a sense logical" approach, but it was vindicated by the Supreme Court as reflecting the correct meaning of Rule 68 and Section 1988.

What Superior prefers to ignore is that *Marek* requires a reading not only of Rule 68 but of whatever other source gives content to Rule 68. That other source must itself speak of attorneys' fees as part of "costs" to bring Rule 68 into play at all. But here Agreement ¶ 5 clearly does not *include* attorneys' fees as costs. Indeed, it specifically identifies attorneys' fees as separate and apart from costs ("all reasonable attorneys' fees, costs, and expenses"). Hence Rule 68 as such could not in any event serve as an independent source for Kessler's payment of Superior's post-offer attorneys' fees.

In summary, the ultimate result of the two-step analysis is that under no circumstances does Rule 68 as such entitle Superior to recover its post-offer attorneys' fees. It might be, depending on the ultimate resolution of the first-step weighing (something not yet possible), that Rule 68 could enable Superior to recapture its post-offer *costs*. That prospect, however, turns out to be moot for the reasons explained in the next section.

### Prevailing Party

■ Both Kessler and Superior Care claim to be the "prevailing party" in this litigation and therefore to be entitled to reimbursement of attorneys' fees under Agreement ¶ 5. Surprisingly, each is partly right and partly wrong.

Because this is a diversity action, Illinois law governs the attorneys' fees issue (*First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1014 (7th Cir.1985), citing *Tryforos v. Icarian Development Co.*, 518 F.2d 1258, 1265 (7th Cir. 1975)). Unfortunately Illinois law offers little illumination as to the determination of "prevailing party" in this case.

*First Commodity*, 766 F.2d at 1014–15 examined, under Illinois law, a contract provision essentially identical to Agreement ¶ 5. For that purpose *First Commodity, id.* at 1015 (quoting *Best Medium Publishing Co. v. National Insider, Inc.*, 385 F.2d 384, 386 (7th Cir.1967)) decided "prevailing party" should be read in the same way as under Rule 54(d): "the party

who prevails 'as to the substantial part of the litigation.' " In reaching that conclusion *First Commodity, id.* at 1014 in part "examin[ed] the purpose for which Paragraph 15 [the fee-shifting provision in that case] was created":

> The purpose of Paragraph 15 is to reimburse a party for the expense of enforcing the agreement through arbitration or suit. The paragraph forces the party in error to bear the cost of that enforcement. The paragraph explicitly includes attorneys' fees in the definition of costs.

Paragraph 5 serves the identical purpose here, and this Court's role is to identify the "party in error" who must bear the cost.[10]

To that end Kessler's decision not to accept Superior's Rule 68 offer of $302,000 marks an obvious watershed for analytical purposes. And rather than the additive process outlined in *Grosvenor*, 801 F.2d at 947–48, the comparison can most profitably be illustrated by its economic equivalent— by eliminating attorneys' fees and other out-of-pocket expenses, thus netting out what Kessler (the client) would realize under the alternatives being examined.[11] From that perspective the rejected $302,000 bird in the hand would have provided Kessler with an effective recovery of $268,-194.37 (because at that point Kessler says $29,667.25 in attorneys' fees and $4,138.38 in costs had been expended). At best the ultimate recovery at trial ($276,574.71) would thus have been about an $8,000 improvement over the Rule 68 offer.

Even more significantly, even that last $8,000–plus figure necessarily represents an obvious overstatement of the situation in Kessler's favor. After all, acceptance of the Rule 68 offer would have totally ended the lawsuit—Kessler would have netted his $268,000–odd recovery undiminished by any claims from Superior. But Kessler's obtaining of the $276,000–odd trial judgment carried a substantial added price tag: Even assuming (most favorably to Kessler) that as the "prevailing party" he would also be allowed to recapture the added fees incurred in pursuing his Count 1 claim, the trial unquestionably demonstrated that Superior and not Kessler must be considered the "prevailing party" on Count 2 (more on this subject later).[12] What that means is that for comparative purposes Kessler's trial recovery must be reduced by (1) Kessler's added expense of litigating the Count 2 claim after the Rule 68 offer was turned down (an added expense that Kessler will have to swallow in all events) plus (2) Superior's total expense of litigating that Count 2 claim both before the Rule 68 offer and thereafter through completion of the trial (such Count 2 expenses are amounts that Superior, as prevailing party on that claim, can shift to Kessler for payment).[13] Those deductions, though not yet quantified for this Court, must certainly drive Kessler's net litigation recovery toward or below the $268,000 figure he would have received free and clear under the Rule 68 offer.[14]

**10.** This Court has read all the Illinois cases cited by the parties and more, and it has found no further guidance on the interpretation of "prevailing party." This opinion has therefore followed and elaborated on the reasonable interpretation of that term announced by the Seventh Circuit, construing Illinois law.

**11.** This approach avoids the deceptive appearance of what might be mischaracterized as a better result where, for example, a greater recovery at a later date could be obtained only by the expenditure of more money for attorneys' fees and related expenses than the amount by which the gross recovery would be enhanced. After all, the true test from Kessler's perspective should plainly have been "What's in it for me?" —at least if his motivation was the proper one of his own economic gain, rather than one of inflicting added expense on Superior for vengeance's sake.

**12.** Only Kessler's Count 1 expressly alleged that it was covered by Agreement ¶ 5 and therefore prayed for an award of attorneys' fees. However, both parties appear to agree that Count 2 too is covered by the Agreement. This opinion proceeds on that basis.

**13.** It is worth noting at this point that the jury's decision on the Count 2 claim must have found that Kessler's version of events, in which he claimed he had simply agreed to defer rather than to forgive part of the rent payable by his son and the other two doctors, was false.

**14.** Interestingly, the FPTO reflects that Superior had actually offered $325,000 (at an unspecified time), an offer also rejected by Kessler. Indeed, to illustrate just how much Kessler was really a non-prevailing party in the global sense, this Court's retained notes of the last pretrial conference at which the FPTO was discussed prepara-

**520**

And it should be emphasized that the just-completed analysis has been skewed in Kessler's favor, because it is predicated on a best-case scenario from his point of view: It assumes that his recovery at trial would not be further reduced by his having to pay any part of *Superior's* fees and expenses attributable to the Count 1 claim on the Note. This Court has indulged that assumption in the analysis up to this point, primarily to avoid any possible circularity in reasoning (that is, proving Kessler not to have been the prevailing party in part just *because* he was not the prevailing party). But it is surely legitimate to take into account the fact that when Kessler was on the bubble—deciding whether or not to accept the free-and-clear $302,000 offer—he at least had to ascribe substantial economic weight to the possibility that he might be saddled with Superior's later-incurred litigation expenses if he spurned the offer and pushed to trial. And *that* factor would surely have driven the scales markedly downward on Superior's side, making the Rule 68 offer the unquestionably better choice.

In any realistic sense, then, Kessler must be viewed as clearly "in error" in not accepting Superior's offer. That decision forced both Kessler and Superior to expend tremendous resources so that Kessler might obtain what was at best a marginally more favorable result for him, and much more likely a break-even or even worse result, than the Rule 68 offer represented. Under the circumstances the purpose of Agreement ¶ 5 is best served by finding Kessler the non-prevailing party and Superior the prevailing party for *all* their post-offer litigation activities.

That conclusion parallels the statement in *Marek*, 473 U.S. at 11, 105 S.Ct. at 3017, albeit made in the Rule 68 context:

In a case where a rejected settlement offer exceeds the ultimate recovery, the plaintiff—although technically the pre-

vailing party—has not received any monetary benefits from the postoffer services of his attorney.

And cf. *Cable Marine, Inc. v. M/V Trust Me II*, 632 F.2d 1344, 1345 (5th Cir.1980) (per curiam) (denying a contractual award of attorney's fees as "inequitable and unreasonable" where plaintiff had rejected a "generous" and eminently reasonable settlement offer and forced the case to trial).

In all events, the conclusion that Kessler was so plainly "in error" triggers an award to Superior of its post-offer-incurred attorneys' fees and costs. And that result is also consistent with a proper allocation of the burden of analyzing the available alternatives in those terms. It will be remembered that in the FPTO Superior admitted liability on the Note, and both parties stipulated to a certain amount of setoffs. All allowable setoffs arose from payments charged to Superior's account that were in fact Kessler's personal obligations. Kessler and his associates had managed the medical practice here in Chicago, with Superior an absentee owner headquartered in New York. It was Kessler and not Superior who knew which expenditures were in fact his personal obligations and therefore should have been chargeable to him rather than Superior. Kessler was thus in the best position to make an informed evaluation of the comparative attractiveness of the settlement offer. In rejecting that offer, he must bear the responsibility and the additional expense that his erroneous rejection caused.

■ Quite different concepts operate, however, in evaluating who should be considered the "prevailing party" in terms of the situation that existed up to the time of the Rule 68 offer. For that purpose it is useful to examine the case on a count-by-count basis to determine the prevailing party as to each count (see, e.g., *First Commodity*, 766 F.2d at 1015 (finding one side

tory to trial, and at which this Court also explored the prospects of settlement, show that at the time of that conference Kessler's counsel spurned the $325,000 offer and instead insisted on receiving $425,000 to $450,000 in cash *plus* Superior's having to absorb Kessler's remaining

malpractice liability (estimated at about $150,000). In any event, that totally unreasonable approach on Kessler's part has not been the predicate for the conclusion reached in this opinion—it is mentioned only in passing.

to be the "prevailing party" as to six of the seven claims in the action)).

As to Count 1, it is true that Kessler often blustered during his deposition that Superior was entitled to no setoffs. But it is eminently clear that in the pleadings and other formal documents in the record, Kessler (apparently bowing to his lawyers' better judgment) always acknowledged substantial setoffs, running in the neighborhood of $130,000 or more throughout most of the litigation (and including the same amount—$127,993.58—in both versions of the FPTO). It is equally clear that although Superior's answers contained affirmative defenses that it had paid amounts due and owing on the Note, it too always began with the admitted liability for the Note's principal sum of approximately $374,000. Thus the real starting point for this litigation (once Kessler acknowledged a minimum setoff of some $130,000) was that he was owed *at most* $244,000. What was at issue was whether Kessler was entitled to less.

Kessler stuck pretty close to that figure throughout most of the case—that is, until his counsel's closing argument to the jury. But apart from its highly realistic Rule 68 offer and its even higher settlement offer reflected in both versions of the FPTO, Superior's posture as a litigator was substantially more extreme. In the FPTO it claimed an additional $165,000 in setoffs for a total of about $293,000. And its trial brief alluded, without providing any specificity at all, to a total of $400,000 in claimed setoffs.

As mentioned, the jury's verdict on Count 1 was ultimately $224,707, not overly far from Kessler's pleading and other record figures of some $244,000—and far closer to that than to Superior's numbers until the very end (its own counsel's argument to the jury). Until he was provided the opportunity by Superior's Rule 68 offer to convert his inchoate litigatable claim into real dollars, Kessler must then be viewed as the prevailing party on the "substantial part" of Count 1, so as to be entitled to attorneys' fees and costs incurred up to his receipt of the offer of judgment.

As for Count 2, on that claim the jury instruction read:

> Dr. Kessler's second claim is based on Superior Care, Inc.'s guaranty of a lease. Superior Care, Inc. does not dispute that it promised to guarantee the lease payments of Preferred Podiatry Services, Ltd. to Dr. Kessler. Instead, Superior Care claims the amount of its guaranty was reduced by Dr. Kessler's agreement to forgive a portion of the rent payable by Preferred Podiatry Services for part of the period covered by the guaranty.
>
> Superior Care will be relieved of its rent guaranty obligation to Dr. Kessler if and to the extent that you find Dr. Kessler agreed to forgive a portion of the rent payable by Preferred Podiatry Services for part of the period covered by the guaranty. If you do not so find, Superior Care remains liable for the full amount of the guaranty.

That accurately reflected Superior's position throughout the litigation. For his part, Kessler denied on the stand *any* forgiveness of rent, claiming instead that he had simply agreed to defer some rent to help tide his son and his son's two associates in the podiatry practice over some hard times. When the jury came in with a $10,200 verdict on Kessler's $37,000 claim, it perforce rejected Kessler's version as a lie and found that he had in fact forgiven the rent.

Thus Superior must be recognized as the prevailing party on the only disputed issue in Count 2: whether Kessler forgave the rent. Superior is therefore entitled to recover its pre-offer (as well as its previously-awarded post-offer) attorneys' fees and costs in litigating Count 2.

At this point a number of matters have been clarified. First, as to the $33,805.63 in pre-offer costs and attorneys' fees requested by Kessler, he is entitled to recover only a part—the portion allocable to Count 1. Those expenses attributable to Counts 2 and 3 may not be shifted to Superior. Because Kessler's briefs do not provide the necessary information for that allocation, he must submit those figures to

Superior and this Court.[15] Second, as the post-offer prevailing party Superior is entitled to its post-offer attorneys' fees, costs and expenses pursuant to Agreement ¶ 5. That calculation too will require an allocation on the basis of a revised submission to Kessler and this Court.

In their memoranda to this point both parties have disputed the propriety of certain billing practices reflected in the quantification of attorneys' fees. Those disputes will certainly be altered (and some may disappear entirely) because the fee requests up to now have been based on liabilities that have been changed by this opinion.

Both sides are ordered on or before September 21, 1989 to submit new calculations of attorneys' fees, costs and expenses based on the apportionment of liability called for by this opinion. This Court will then order any required further procedures based on its examination of those submissions.

### Costs

Superior has already tendered a bill of costs incurred post-offer, and Kessler has already raised several objections to them. In the legal sense (as contrasted with common usage, which tends to treat "costs" and "expenses" as interchangeable terms), the word "costs" is a term of art essentially bounded by 28 U.S.C. § 1920 ("Section 1920") and the other provisions (such as 28 U.S.C. § 1821 ("Section 1821")) properly called upon to flesh out Section 1920.[16] Any discussion of taxable costs is now shaped by *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987):

We hold that absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920.

Thus no discretionary power exists to tax costs not otherwise authorized.

But here there is no need to parse Superior's asserted "costs" to see whether and to what extent they fit within the statutory term-of-art definition. Rule 54(d) calls for the awarding of costs to the "prevailing party," and this opinion has already determined the extent to which Superior (and Kessler) meet the identical standard for purposes of Agreement ¶ 5. And because the latter provision calls for payment of the prevailing party's reasonable "expenses" as well as "costs," and because the former is a generic term that would sweep up any reasonably-incurred amounts that would not qualify as statutorily-defined "costs" anyway, there is no reason at all to pause over issues that cannot make a dime's worth of difference. Both parties are ordered to shift their focus, as part of their September 21 submission, to the question whether Superior's claimed expenditures other than attorneys' fees meet the test of "reasonable expenses" rather than "costs" as such.

### Rule 11 Liability

■ Superior makes several arguments that this Court must sanction Kessler under Rule 11. Superior's main focus is on Kessler's having filed pleadings admitting setoffs in the $130,000 range, yet having adamantly denied any setoffs at all in his deposition. Superior claims Kessler there-

---

**15.** At that point, the actual Rule 68 determination could be made. It would seem at best touch and go whether or not the properly allocable part of the nearly $34,000 Kessler has requested, plus the damages awarded at trial, would exceed the $302,000 offer. If they did not, Rule 68 would dictate Superior's recovery of its post-offer costs (see *Grosvenor*). But that calculation is really pointless, given the fact that Superior is entitled to those items under Agreement ¶ 5—a decision already reached in this opinion and reconfirmed in the next sentence of the text.

**16.** That principle is of course altered in situations where some special content is expressly added to the concept of "costs," as in the many statutes that—like Section 1988—provide for awarding attorneys' fees *as part of costs.* See *Marek,* 473 U.S. at 8, 105 S.Ct. at 3016 and *id.* at 43–51, 105 S.Ct. at 3034–38 (Brennan, J., dissenting) for an enumeration of such statutory provisions.

fore lied either in his deposition or in his pleadings—"bad faith" activity sanctionable under Rule 11. That notion is nonsensical.

For one thing, Rule 11 by definition applies to the filing of documents with the court. It was not Kessler but his attorneys who signed and filed the pleadings. And there is nothing to suggest those pleadings failed to meet Rule 11's standards (both subjective and objective). This opinion has several times rehearsed the reasonable relationship between Kessler's pleadings posture as to liability and the way the case came out—and to the extent Kessler proved a loser on his claims, that cannot of itself support Rule 11 liability.

Relatedly, it will be recalled from the earlier discussion that Kessler's deposition testimony as to setoffs cannot fairly be viewed as statements of fact, instead reflecting his emotional mindset about this case and about Superior as his perceived mortal enemy. Certainly the contrast between his deposition statements and the formal pleading statements (on which he testified he followed his lawyers' advice) do not serve as the predicate for sanctioning the latter.

As for the suggested imposition of Rule 11 liability for Kessler's deposition testimony as such, it is true that *Bower v. Weisman,* 674 F.Supp. 109, 112 (S.D.N.Y.1987) reads the Rule's reference to "pleading, motion, or other paper" as embracing a deposition of a party when signed by that party as a witness (see Rule 30(e)). That is certainly a novel notion, and any court considering it would want to consider such factors as:

1. the fact that discovery materials (including depositions) are not to be filed with the court save on court order (see this District Court's General Rule 18(B) and (C));

2. the fact that the Rule 30(e) signature requirement is imposed on an individual as a *witness,* while Rule 11 seeks

to impose responsibility for not-well-founded statements on individuals as *parties;* and

3. the fact that Rule 26(g), which directly addresses liability comparable to that under Rule 11 for like conduct in the course of discovery, does not by its terms cover a signed deposition.

Those and other nice questions need not be dealt with here, for Kessler's testimony as discussed in the preceding paragraph provides an independent reason for rejecting Superior's effort to stick him with Rule 11 liability.

Superior also urges that Kessler should have conceded, earlier in the game, nine setoffs that his counsel conceded in closing argument. Superior's position is that whether those payments by Superior were for personal obligations of Kessler was a topic peculiarly within Kessler's knowledge, so that he was lying in his earlier interrogatory answers. Though this District Court's General Rule 18(B) extends to those discovery materials as well, Kessler's complained-of conduct infringes the essentially identical standards of Rule 26(g)— which targets discovery misconduct—rather than Rule 11. Kessler has given no explanation for those interrogatory answers, so his Rule 26(g) liability is effectively acknowledged. But on its side Superior has shown no resulting damages, especially given its own seriously overreaching claims as to the amount of setoffs. In the posture of this litigation, all the items had to be dealt with at trial in any case, and the lack of any showing by Superior of an appropriate sanction calls for the denial of its motion in this respect.

Finally, Superior argues that Kessler's failure to produce a book and a letter in response to document requests is sanctionable under Rule 11. But again it mistakes Rule 11 for Rule 26(g). And again it has shown no damages or other appropriate sanction. Like Superior's other efforts, this one too is rejected.[17]

---

**17.** Though this may not stand as an independent reason for denial of the motion, it *is* distressing to have to deal with a kind of blunderbuss "our opponent was a bad person and therefore ought

to be punished" motion, where counsel has not even given the matter enough thought to figure out what the proper source of potential relief might be. Is it really the court's responsibility

### Section 1927

■ Superior also characterizes Kessler's asserted Rule 11 violations as Section 1927 violations as well. That contention is wholly without merit. Section 1927 (unlike Rule 11) is aimed *only* at attorneys' conduct. It permits sanctions against an attorney who "pursues a path that a reasonable careful attorney would have known, after appropriate inquiry, to be unsound" (*Walter v. Fiorenzo,* 840 F.2d 427, 433–34 (7th Cir.1988), quoting *In re TCI Ltd.,* 769 F.2d 441, 445 (7th Cir.1985)) or who "intentionally file[s] a claim that lacks a plausible legal or factual basis" (*Ordower v. Feldman,* 826 F.2d 1569, 1574 (7th Cir.1987), quoting *Knorr Brake Corp. v. Harbil, Inc.,* 738 F.2d 223, 226 (7th Cir.1984)).

■ Surely Kessler's rejection of the Rule 68 offer did not betoken his lawyers' violation of Section 1927. Superior has not fairly ascribed that decision as to accepting or rejecting the offer to the lawyers rather than the client. Moreover, no authority suggests that Rule 68 calls for any consequence except the one it specifies. It does not contemplate that a rejected Rule 68 offer that turns out to have been a better deal than the ultimate judgment automatically imposes bad faith liability.

Superior also contends that Kessler needlessly multiplied the litigation by failing to concede setoffs earlier in the lawsuit. That argument has substantial force: As this opinion has repeated on several occasions, Superior was entitled to setoffs for money charged to it in satisfaction of Kessler's personal obligations, and Kessler was in the best position to know right from the start whether or not a claimed setoff was for such a personal obligation. Kessler's lawyer ultimately admitted during closing that several of the disputed items were in fact Kessler's personal obligations, and he never made any *legal* argument that would prohibit Superior from claiming a setoff. Certainly the lawyer's eleventh-hour admissions[18] were based on facts long since known to Kessler. Thus Kessler's failure to admit those items earlier unquestionably expanded portions of the litigation needlessly—Superior had to depose and call at trial several witnesses to dispute these claims.

But Superior's problem is that it was guilty of similar conduct: It pressed claims for additional setoffs twice as large as it ultimately received, only to abandon those at the last minute. Many of those items had to be recognized as proper charges to Superior's account from the outset. In such a case, it is only equitable to deny to both parties (although to this point only Superior has actually claimed) any recovery under Section 1927 for needless multiplication of the proceedings.

Nor does Kessler's attempt to contest the nature and amount of setoffs give rise to his lawyers' liability. Even if his decision in that respect could be placed at the lawyers' door, the substantive Section 1927 standard is identical to that of Rule 11 (see this Court's opinion in *Wielgos v. Commonwealth Edison Co.,* 123 F.R.D. 299, 305 (N.D.Ill.1988)). Because this opinion has already rejected this area of activity under Rule 11 standards, the Section 1927 motion meets the same fate: It too is denied.

### Conclusion

It is appropriate to provide a brief recapitulation of what has been done here:

1. As required by Agreement ¶ 5, Kessler is ordered to pay Superior's attorneys' fees, costs and expenses incurred (a) in litigating this entire case after Superior's Rule 68 offer of judgment and (b) in litigating Count 2 before the offer of judgment was made.

2. Also as required by Agreement ¶ 5, Superior is ordered to pay Kessler's attorneys' fees, costs and expenses in-

---

to call the lawyers' attention to the inappropriateness of Rule 11 and the existence of Rule 26(g)?

**18.** "Eleventh hour" is an understatement. It would be more accurate to liken their situation to the doomsday clock regularly shown on the cover of the *Bulletin of Atomic Scientists,* which measures time in increments of minutes before 12 midnight.

curred in litigating Count 1 up to the time that Superior tendered the offer of judgment.

3. Superior's Rule 68 motion is denied as a source of Kessler's liability for attorneys' fees and is mooted in all other respects.

4. Superior's motions under Rule 11 and Section 1927 are denied.

Both parties are ordered to provide, on or before September 21, 1989, revised submissions as to the quantification of the obligations referred to in the first two numbered paragraphs. This Court will then notify them whether any further submissions or proceedings are required.