923 F.2d 856
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
CASCADE DIE CASTING GROUP, INC., Plaintiff-Appellant, Cross-Appellee,
v.
ARWOOD CORPORATION, also known as Arwood, an Interlake
Company, Interlake Corporation and W.L. Chapman
Company, Inc., Defendants-Appellees,
Cross-Appellants.
 Nos. 90-1509, 90-1597.
 United States Court of Appeals, Seventh Circuit.
 Argued Sept. 27, 1990.
Decided Jan. 9, 1991.
 
 Before CUMMINGS, COFFEY and MANION, Circuit Judges.
 
 ORDER
 
 1
 In December 1987 Cascade Die Casting Group, Inc. filed a five-count diversity complaint against Arwood Corporation, Interlake Corporation, and W.L. Chapman Company, Inc.[1] The complaint stemmed from a purchase agreement between buyer TCH Industries, Inc. and sellers Arwood and Chapman. TCH had assigned its interest under the purchase agreement to plaintiff Cascade. The assignment was permissible under Section 11.2 of Article XI of the purchase agreement. The purchase agreement involved the sale of the die casting divisions of Arwood and Chapman for $13,650,000 and was dated November 1, 1985.
 
 Count I
 
 2
 The first count was titled "Breach of Contract and Warranty Re Economic Price Adjustments" and relied upon a representation and warranty that the financial statements furnished by sellers with respect to the business sold were prepared in accordance with Arwood's normal internal accounting policies and fairly represented the financial condition of the business. The plaintiff alleged that the defendant breached the representation and warranty because the financial statements provided by sellers were not fairly presented in certain respects. This count sought $1,000,000 in damages plus reasonable attorney's fees. The jury returned a verdict for defendants on this count.
 
 Count II
 
 3
 This count was titled "Breach of Contract and Warranty Re Acceleration of Sales." Here plaintiff alleged that prior to the execution of the purchase agreement, defendants wrongfully accelerated their shipments to Arwood's customer Vought Corporation. Cascade sought $1,896,000, but the court entered a directed verdict for defendants on the ground that they had not breached any warranty as to pre-execution shipments.
 
 Count III
 
 4
 This count sought a declaratory judgment that defendants were liable for loss or damage to plaintiff that might result from the Defense Contract Audit Agency's (DCAA)[2] audit of defendants' pricing and practices under the Vought contract. The jury found for plaintiff on this count but also found that it should bear 75% of liability for whatever damages it suffered. The amount of damages was undetermined.
 
 Count IV
 
 5
 Count IV was labeled "Common Law Misrepresentation Causing Plaintiff to Pay Substantially More for the Purchase." In this count plaintiff claimed $2,896,000, but again the jury returned a verdict for defendants.
 
 Count V
 
 6
 This count was labeled "Unjust Enrichment" and asserted that as a result of defendants' misrepresentations, they were unjustly enriched by $2,896,000. The court entered a directed verdict on Count V.
 
 
 7
 The trial judge denied defendants' motion for judgment notwithstanding the verdict as to Count III and denied plaintiff's motion for a new trial. The court awarded defendants their costs but denied them attorney's fees. Plaintiff's motion for costs was denied and it was awarded $8,750 in attorney's fees. We affirm.
 
 
 
 Issues on Appeal
 Plaintiff in its appeal draws the attention of this Court to a series of rulings by the trial judge, claiming in each case that the rulings were in error. Five out of six issues raised by the plaintiff on appeal concern evidentiary rulings made by the district judge. Plaintiff's sixth argument concerns the trial judge's apportionment of attorney's fees at the close of the trial. As to this final claim, the defendants cross-appealed, suggesting that the award of fees, based upon the plaintiff's partial victory in Count Three, was in error and calling upon this Court to find plaintiff 100% liable on that count also.
 Denial of Cascade's Motion In Limine
 One of the defenses was that plaintiff was negligent in performing due diligence before the closing. Plaintiff contended that a buyer's due diligence is not a defense to breach of warranty or fraud and before trial sought to keep out evidence regarding its pre-closing investigation of the business. Judge Conlon ruled that since defendants asserted that this subject bore on its theory of the case, it was inappropriate to decide it pretrial (App.A-11). This cannot be considered a clear abuse of discretion. Culli v. Marathon Petroleum Co., 862 F.2d 119, 123 (7th Cir.1988). The defendants introduced this evidence because it bore relevance to the case. In response to the plaintiff's claim that the defendant committed breach of warranty and fraud, the defendants asserted that all of the required disclosures were made such that no duty owing to the plaintiff was violated and all liabilities arising out of the Vought contract and Assignment and Assumption Agreement were in fact assumed by the plaintiff.
 The plaintiff would have us accept a proposition that they had no duty to inspect independently facts warranted by the defendants. It relies upon the following quotation from Eisenberg v. Goldstein, 29 Ill.2d 617, 621 (1963), certiorari denied, 377 U.S. 964:
 If one party makes a positive statement of a material fact as true which he knows to be false but intends to be relied upon by the other party as true, and the statement actually is relied and acted upon as true by the other party, the party making the statement cannot charge the other with negligence in believing it.
 Id. at 19. The plaintiff offers an incomplete proposition, however, by neglecting to mention either the decision in the case or the language following the above quote. In Eisenberg, the state failed to find the existence of fraud in a contract for the sale of land. Among the factors relied upon by the court was a recognition that the plaintiffs had exercised their own judgment in entering into the transaction, having themselves inspected the property at issue. In language immediately following on the heels of the plaintiff's quotation, the court wrote:
 [T]he evidence is undisputed that the plaintiffs inspected the property for themselves. It is quite clear that in making the exchange they relied upon their own judgment, based on such examination, and not upon representations made by the defendants. Under such circumstances no fraud was practiced upon plaintiffs of which they can complain, even though the examination made by them may have been inadequate, so as to lead to mistaken conclusions.
 Id. While Eisenberg stands for the now complete proposition that while a party warranting the truth of a fact may not charge another party with negligence for believing it, no claim for fraud can lie where the plaintiff also investigated for itself the fact and exercised its own judgment in choosing to believe it.
 Here the trial court's denial of the motion in limine not only permitted the defendants to assert due diligence as a defense, but the plaintiff also introduced its own evidence that it investigated the acquisition. Moreover, plaintiff waived its opportunity to challenge the defense asserted. Instead of objecting to this evidence when the trial commenced, plaintiff itself raised with witnesses the subject of its pre-closing investigation of the business and did not object to any evidence on the subject nor request an instruction limiting the defense of due diligence to other counts not based on breach of warranty. Defendants thus rightly point out that the fraud claim requires the plaintiff to show that they relied to their detriment upon the warranties made. Because it was within the discretion of the trial judge to permit the admission of this evidence, there was no reversible error in receiving evidence regarding plaintiff's pre-closing investigation of the business.
 Directed Verdict on Count II
 Judge Conlon directed a verdict for defendants on Count II on the ground that there was insufficient evidence for a jury to find they had breached a warranty by pre-execution shipments to Vought. Her ruling must stand for several reasons. First, plaintiff bases its argument that defendants fraudulently accelerated the shipments under the Vought contract by arguing that defendants deviated from the usual and ordinary course of business. However, the plaintiff failed to produce any evidence of the ordinary course of business, either in the presentation of its own case, or in the colloquy between the district judge and plaintiff preceding the court's decision to issue a directed verdict on Count II. Second, the defendants' expert, Dean Fischer of Arthur Andersen & Company, testified that if anything, defendants were behind schedule on the shipments to Vought. William C. ("Shorty") Johnson, an official of Vought, also supported the testimony of Fischer concerning the prescribed delivery dates. Third and finally, the plaintiff argues that the defendants rebutted evidence that the shipments under the Vought contract occurred earlier than allowed under the purchase agreement by introducing parol evidence. However, plaintiff did not identify the purported parole evidence, nor did it preserve an objection to parole evidence at trial (Tr. 867-873). In fact, the plaintiff never showed how the purported parole evidence actually modified the original purchase agreement. Consequently, the directed verdict was appropriate.
 Trial Court's Evidentiary Rulings
 Plaintiff asserts that the district court erred by improperly excluding relevant evidence. For example, plaintiff wanted to show that defendants knew of problems with the economic price adjustment provision in the Vought Corporation contract with defendants. In particular, plaintiff states that the court should have permitted it to question defense expert Dean Fischer concerning a change in his deposition transcript about the failure of defendants' financial statements to plaintiff to "make any provision for the economic price adjustment that was in the Vought contract with defendants" (Br. 23). However, the court twice allowed plaintiff's questions with respect to this matter (Tr. 1000-1001, 1016, 1017), so that no error has been shown.[3]
 Plaintiff also insists that the court should have admitted its exhibits 46 and 51. Since plaintiff does not refer us to any objections to these exclusionary rulings we will not consider them.
 The trial judge was justified in refusing to admit into evidence defendants' answer to the complaint when no reason was given to her as to why this should have been received as an admission. Likewise plaintiff has not shown why defense counsel Richard Doersch's opinions should have been admitted. Plaintiff also complains that the trial court should not have admitted an early report of the DCAA, but plaintiff only presented an authentication objection which was of course overruled since the testifying witness had obviously identified it (Tr. 964). Certainly Judge Conlon was justified in not admitting as irrelevant later reports of that agency occurring months after the closing (Tr. 1063-1067).
 In addition, the district court permissibly refused to admit on hearsay grounds portions of the depositions of John Schlatter, sales manager of the Arwood division, and Arwood controller Joseph Agnello, who was being asked to comment on an exhibit not in evidence.
 Exclusion of Testimony of Plaintiff's Expert
 Cascade unsuccessfully sought to introduce expert testimony from Robert Selden, head of an accounting firm in Oakbrook, Illinois. We have held that the exclusion of expert testimony is to be affirmed unless "manifestly erroneous." United States v. Lundy, 809 F.2d 392, 394-395 (7th Cir.1987). In advance of trial, the district court granted the defendants' motion to exclude the testimony of Selden as to the issue of damages. In her order, the district judge noted that in answering defendants' interrogatories in July 1989, Selden did not render any written report regarding liability, materiality and damages and had not yet completed his damage calculations. At the time of his deposition, he still had not completed those calculations and plaintiff's counsel instructed him not to answer defense counsel's inquiry as to the assumptions underlying his damage study. Therefore the court ruled:
 The trial of this two-year old case begins in two weeks. Since neither Selden's opinion regarding damages nor the basis for his opinion has been properly or timely disclosed to defendants, he is barred from testifying as to that issue.
 As to whether to receive Selden's opinion on the issues of liability and materiality, the court reserved ruling until it could conduct a voir dire examination before the close of plaintiff's case in chief. After voir dire of Selden at trial and after argument, the district judge sustained objections to Selden's testimony regarding the timing of accrued liabilities and materiality. The court reasoned that Selden had been identified and deposed before he had done his work on the case, thus putting defense counsel in an unfair position "of not having a chance to evaluate that expert's opinion and meet that expert's opinion and the bases for that opinion at trial." Tr. 764. She added that this "runs counter to the philosophy of the federal rules of evidence, the standing pretrial order of this District Court and basic notions of fair play in trial." . Consequently the defendants' objection to Selden's testimony was sustained. In such a setting, the trial court did not abuse her broad discretion. United States v. Watson, 587 F.2d 365, 369 (7th Cir.1978), certiorari denied, 439 U.S. 1132.
 Disallowance of Testimony of Cascade Officials
 Plaintiff argues that its president Theodore Hohman and its vice president of finance Stephen Wentworth should have been permitted to testify with respect to the calculation of the economic price adjustment clause (EPA) in defendants' contract with Vought. This clause governed adjustment of prices for inflation as the contract progressed, and it contained a formula tied to government indices for material and labor costs. If the inflation rate were lower than estimated in the contract, defendants would owe Vought an adjustment in contract price for that year, and if inflation were higher than estimated, Vought would owe defendants an adjustment. After the closing between plaintiff and defendants, Vought requested an EPA payment from plaintiff for $2,055 for fiscal 1983 and $77,173 for fiscal 1984. For the third contract year, the EPA calculation was $48,675. Plaintiff obtained payments from defendants for these amounts as to shipments made before the closing date. Count I sought $1,000,000 from defendants for breach of warranty with respect to EPA, but the jury returned a verdict for defendants.
 Plaintiff contends that the court should have allowed Hohman and Wentworth to testify about the EPA subject. However, Wentworth was permitted to testify with respect to his EPA calculations and about defendants' paying plaintiff the EPA for 1983, 1984, and the pre-closing part of 1985. Tr. 646-652. Certain testimony was excluded because of lack of proper foundation and because plaintiff's counsel refused to let Wentworth answer questions about the subject at his deposition. Tr. 650-653, 656-657, 681-685. Plaintiff has not shown why these rulings were improper. Finally, since plaintiff failed to prove liability except as to Count III,[4] there was no reversible error with respect to excluding damage testimony.
 Admission of Opinion Testimony from Dean Fischer
 Defendants' expert witness was Dean Fischer of Arthur Andersen & Company. He was permitted to testify that purported overaccruals of liability on defendants' die casting division's financial statements offset the underaccrual for the EPA. The only objections to such evidence were lack of qualification and foundation, and the district judge properly overruled them. While plaintiff now complains that hearsay was involved because Fischer had obtained some of this information from Arwood controller Joseph Agnello, this objection was not made below (Tr. 948-949) and comes too late. Fischer's testimony that a DCAA audit is a routine occurrence in government contracts was clearly within his competence. We have considered plaintiff's other objections to Fischer's testimony and conclude that they were properly overruled within the discretion of the district judge.
 Allowance of Attorney's Fees and Costs to Plaintiff
 In the court below, plaintiff petitioned for $399,686.89 in attorney's fees but was allowed $8,750. However, plaintiff only prevailed with respect to 25% of whatever damages might be awarded under Count III with respect to the DCAA audit of defendants under the Vought contract. Awards of attorney's fees are not to be overturned absent an abuse of discretion. Pennsylvania Truck Lines, Inc. v. Solar Equity Corp., 882 F.2d 221, 227 (7th Cir.1989). Since plaintiff remains liable for 75% of the DCAA audit, it has not shown that the amount of fees awarded was erroneous. Plaintiff has not shown that it will recover anything from defendants as a result of this suit, and plaintiff was not adjudged to be the prevailing party in the litigation. Therefore we of course cannot accept plaintiff's argument that it is entitled to recover the $399,686.89 in attorney's fees from defendants.
 Plaintiff turns next in its appeal to the matter of costs for the litigation, urging us to award them to Cascade. Costs, however, are awarded only to the prevailing party, and the district judge, in denying costs to plaintiff, made a specific finding that Cascade was not the prevailing party (R. 196, A.8). However, plaintiff argues that the district court's conclusion was wrong as a matter of law.
 The "law" cited to us by the plaintiff is quite simply not the law as it exists either in the Supreme Court or in this Court. For its argument that it was the prevailing party, plaintiff, which prevailed as to a fraction (25%) of one-sixth of the counts at issue, cites to us the following language from Holcomb v. United States, 78 F.R.D. 527, 529 (E.D.Wis.1978), quoted in First Commodity Traders, Inc. v. Heinhold Commodities, Inc., 766 F.2d 1007, 1015 (7th Cir.1985): " '[P]revailing party' means a party who has obtained some relief in action, even if that party has not sustained all of his or her claims." Plaintiff apparently thinks that Holcomb and the litany of other cases cited to us, most of them from other circuits, support the far-reaching proposition that in an action where the plaintiff prevails on even a small fraction of its claims, it is entitled to be called the prevailing party for purposes of awarding costs to the plaintiff.
 Such a rule is not only nonsensical, it is also unsupported by the law, and if plaintiff had bothered to read the very next sentence of our decision in First Commodity Traders, it might have realized just how wrong it was. After recognizing in that case that a prevailing party need not prevail on all of its claims, we went on to say: "Nevertheless, this court has held that under Rule 54(d) the 'prevailing party' is the party who prevails 'as to the substantial part of the litigation.' " 766 F.2d at 1015, citing Best Medium Publishing Company, Inc. v. National Insider, Inc., 385 F.2d 384, 386 (7th.Cir.1967), certiorari denied, 390 U.S. 955. In First Commodity, we applied our understanding of Rule 54(d) to deny costs to a party that had prevailed in only one out seven claims. Id.
 Moreover, in its reply brief, the plaintiff buttressed its incomplete cite to First Commodity Traders with a recent decision by the Supreme Court in Texas State Teachers Ass'n v. Garland Indep. School Dist., 109 S.Ct. 1486, in which the Court wrote:
 [A]t a minimum, to be considered a prevailing party within the meaning of Sec. 1988 [the civil rights attorney's fees statute] the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant.
 
 
 [109]
 S.Ct. at 1493. Plaintiff makes the conclusory suggestion that the legal relationship between it and the defendants has changed as a result of the litigation, without showing how. Moreover, Texas State Teachers Ass'n is consistent with an understanding of "prevailing party" status that would deny the privilege to the plaintiff in this case. For the Court acknowledged that "where plaintiff's success on a legal claim can be characterized as purely technical or de minimis, a district court would be justified in concluding that the 'generous formulation' * * * has not been satisfied." Id. at 1493. To the extent that the Supreme Court's formulation is generous, it is that way for reasons wholly unrelated to plaintiff's case. Texas State Teachers Ass'n involves an award of costs under 42 U.S.C. Sec. 1988, the Civil Rights Attorney's Fees Statute. Recovery of fees and costs is an indispensable part of civil rights litigation, and Sec. 1988 is designed to provide a means for civil rights plaintiffs to recover fees and costs in suits that they otherwise cannot afford to bring. And yet, even under Sec. 1988, a "prevailing party" must surpass a certain threshold to be considered prevailing. Therefore plaintiff's attempt to argue that it is the "prevailing party" here is wholly unavailing as a matter of law, and the district judge did not abuse her discretion in recognizing this
 Validity of Judgment Under Defense Contract Audit Agency Count III
 Defendants assert that they were entitled to a judgment under Count III that plaintiff is 100% liable, rather than 25% liable, for any award which may be rendered as a result of the pending DCAA audit. We disagree with their cross-appeal. In order for this Court to reverse the verdict of a jury, we must find that "all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict could ever stand." Pennsylvania Truck Lines, Inc. v. Solar Equity Corp. 882 F.2d 221 (7th Cir.1989), quoting Pedrick v. Peoria & E.R.R., 37 Ill.2d 494, 229 N.E.2d 504, 513-514 (1967) (other citations omitted). Pursuant to this inquiry by a district court, reviewing a motion for a directed verdict or a motion for a judgment notwithstanding the verdict, or by this Court, reviewing the denial of either motion, the non-moving party has the benefit of all inferences that the evidence fairly supports. Tire Sales Corp. v. Cities Serv. Oil Co., 637 F.2d 467, 472 (7th Cir.1980), certiorari denied, 451 U.S. 920. Issues of credibility, moreover, may not be reexamined by this Court, for the jury bears the responsibility of resolving controverted issues of fact. Pennsylvania Truck Lines, 882 F.2d at 225.
 The jury concluded that defendants breached their warranty by failing to disclose the DCAA audit. Defendants quarrel with the jury's decision to interpret Section 4.12 of the Purchase Agreement as imposing on them the obligation to disclose the possibility of an audit by DCAA. Section 4.12 provides:
 Except as set forth in Schedule IX, (i) there is no litigation, suit, proceeding, action, claim, charge, grievance or investigation (collectively "Claims") pending or, to the best of Sellers' knowledge, threatened against Sellers relating to or affecting the Division or the conduct of the Business or involving any property or asset included in the Contract Assets, before any court, governmental agency or other tribunal. * * *
 Defendants contend that this provision of the Purchase Agreement did not impose upon them the obligation to disclose the intent of the DCAA to conduct an audit. Whether the disclosure of "Claims" as required by Section 4.12 contemplated a government audit was for the jury to decide based on the testimony presented by the plaintiff.
 In this case, the jury, in reaching its verdict, failed to find persuasive the defendants' contention that the contract covered by the provision did not include the contract that was audited by the DCAA. Furthermore, Edward Hopkins, the president of defendant Interlake, when asked whether the purposes of Section 4.12 included the disclosure to the buyer of governmental investigations and audits, responded, "To the best of our ability." Tr. 620. Defendants objected to this question, but the district judge overruled the objection. In addition, Joseph Agnello, controller of defendant Arwood Corporation testified that had he known of the audit, he would have disclosed it (Tr. 369). It is noteworthy that neither witness, nor anyone else involved in the disclosure process, testified that the audit was not covered by the warranty contained in Section 4.12.
 The reasonable juror could legitimately have found based on the above testimony and the plain language of Section 4.12 that defendants breached their obligation to disclose the pending DCAA Audit to plaintiff. That the jury chose to believe Messrs. Hopkins and Agnello rather than rely on the interpretation of defendants' expert, Dean Fischer, who was uninvolved in the drafting of the agreement, was a credibility determination entirely within the province of the jury. Therefore, we deny the defendants' cross-appeal and affirm the jury's verdict as to liability on Count III.
 Judgment affirmed in all respects.
 
 
 [1]
 Chapman was a wholly owned subsidiary of Arwood, which was a wholly owned subsidiary of Interlake Corporation
 
 
 [2]
 This is an agency of the United States conducting audits under defendants' contract with the Vought Corporation
 
 
 [3]
 The trial court did sustain defendants' objection to the form of a question plaintiff put to Mr. Fischer, but plaintiff made no effort to rephrase the question (Tr. 1002). While plaintiff contends that Judge Conlon wrongly permitted Fischer to testify about "overaccruals" on financial statements, it refers us to neither objection or ruling, thus precluding consideration here
 
 
 [4]
 The amount of any damages under Count III has not been resolved